THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* STEVEN ARTHUR CAMEL, Defendant-Appellant.

(No. 11545; ▉▉▉▉▉▉)

Fourth District—March 8, 1972.

Robert I. Auler, of Champaign, for appellant.

Lawrence E. Johnson, State's Attorney, of Urbana, (Thomas L. Knight, of counsel,) for the People.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

Defendant-Appellant Steven Arthur Camel was convicted, after bench trial, of rape, deviate sexual assault, aggravated kidnapping and indecent liberties with a child. He was sentenced six to eighteen years on the rape conviction; six to eighteen years for the aggravated kidnapping, and four to twelve years for deviate sexual assault, all sentences to run concurrently. No sentence was imposed on the conviction of indecent liberties. Defendant appeals from all of the convictions.

The unfortunate victim of these crimes was Nancy Shakeshaft who was fifteen years of age at the time. It is a fair summary of the testimony to say that the case of the People depended, almost entirely, upon her testimony, though there is some additional evidence which is corroborative in nature.

On July 15, 1970, defendant filed a Motion for Discovery which requested the People to produce, among other things, the statements of witnesses.

On July 20, 1970, the court ordered the production of copies of statements of witnesses.

The file mark of the Clerk is partially illegible, but it appears that on July 23, 1970, the People filed Answer to Pretrial Motions to which there was attached the copy of a statement of one witness, Victoria Lea Booth. On September 4, 1970, the People filed an Amended Answer to Defendant's Motion. This Amended Answer listed additional witnesses and contained nothing else. The People furnished no witness statements other than that attached to the Answer filed July 23, 1970.

During the course of the trial Nancy Shakeshaft was called as a witness for the People, and the following questions and answers appear in the record of her cross-examination:

Q. Now did any police officers or State's Attorney's people ever take a statement from you, Nancy?

A. Yes.

Q. Did you sign that statement and read it over first?

A. No.

Q. It was just a notation of what you had said?

A. Yes.

Q. How many times did people take statements from you?

A. Well, all I remember is one, one time that they wrote it down and then they kept asking me to repeat it.

Q. How many times did you look at that, reviewing, or review that statement?

A. I never reviewed it.

Q. You have not seen it again until this date?

A. I didn't see it today.

From this testimony it is apparent that the complaining witness had, in fact, given a statement either to police officers or persons from the office of the State's Attorney, and that at the time something was reduced to writing; and it is also clear that no statement of the witness was ever furnished to the defendant.

■■ That statements of witnesses are discoverable and available to defendants for purposes of impeachment is too firmly established to require citation of the many cases, both Fereral and State, including Illinois, which followed the decision in *Jencks v. United States*, 353 U.S. 657, 1 L.Ed.2d 1103, 77 S.Ct. 1007.

In *People v. Sumner*, 72 Ill.App.2d 258, 218 N.E.2d 236, we remanded to the trial court with directions to conduct an evidentiary hearing to explore "*  *  *  into the existence, availability, proper producibility and relevancy  *  *  *" of statements which had been made to law enforcement officials or to others called by the State as witnesses. The trial judge was also directed to determine whether any statements existed, their producibility, and to determine once producibility was established, whether the lack of production might have affected the result of the trial or prevented a fair trial and on the basis of his findings to award or refuse to award a new trial.

Pursuant to the mandate the trial court heard evidence and concluded that certain statements or memoranda were producible, carefully analyzed the statements in comparison with the testimony at the trial, and found that while the statements should have been produced the failure to do so was not prejudicial and no new trial was granted. In *People v. Sumner*, 92 Ill.App.2d, 386, 234 N.E.2d, 537, we affirmed the action of the trial court.

The decisions of this court were then appealed to the Supreme Court of Illinois (*People v. Sumner* 43 Ill.2d, 228, 252 N.E.2d, 534), which held that where the relevancy and competency of a statement has been

established, and no privilege exists, the trial court, on appropriate demand shall order the statement delivered directly to the accused for his inspection and possible use for impeachment purposes and that *only the defense* shall be permitted to determine whether it may be useful for impeachment. (Emphasis supplied). The Supreme Court reversed and ordered a new trial.

■■ We, therefore, remand to the trial court with directions to hold an evidentiary hearing for the purpose of determining whether or not a verbatim, or substantially verbatim record of a statement given by Nancy Shakeshaft to any police officer, the State's Attorney or member of his staff was in existence at the time of the entry of the discovery order on July 20, 1970, or at the time of the trial of the case; and if it be determined that such a statement was in existence to award the defendant a new trial. Should it be determined that such a statement was not in existence the trial judge shall certify that finding to this court, together with the transcript of the evidentiary hearing.

Remanded with directions.

CRAVEN, P. J., and SMITH, J., concur.