THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MOSE W. KILLEBREW, Defendant-Appellant.

(No. 70-137; ▮▮▮▮)

Third District—March 21, 1972.

Bruce Stratton, of Defender Project, of Ottawa, (James Geis, of counsel,) for appellant.

Edward P. Drolet, State's Attorney, of Kankakee, for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Defendant Mose W. Killebrew was found guilty of Armed Robbery and sentenced to imprisonment for a term of not less than five nor more than ten years.

The robbery in question occurred at a filling station where Roger Jones was the sole attendant on duty. He was also the sole eyewitness in the trial of the case. A man bearing a rifle approached a window at the station at approximately 9:30 to 10:00 P.M. on the evening of January 2, 1969, and beckoned Jones to come outside. The front and sides of the station were well-illuminated. When Jones came outside he saw the man with the rifle standing beside a large illuminated billboard. The billboard bore white fluorescent lights on its top. The rifle-bearer was in full view of witness Jones. The rifle bearer then caused Jones to proceed to the rear of the station into darkness, where a second man helped the rifle bearer remove money from Jones' wallet, and Jones' money changer and, also his wedding ring were removed. The rifle bearer and his accomplice then fled and Jones returned to the station immediately and notified police. The police met Jones at the filling station.

Jones described the man who bore the rifle as a "colored guy", "dark complected", and "clean-shaven" standing about 6'1", weighing about 180 lbs. and wearing a pair of sunglasses, a dark coat and a dark dress hat. When questioned as to time, Jones estimated that it took him approximately a minute to walk from the inside of the filling station to where the assailants removed his property.

Approximately 45 minutes following the robbery Jones reviewed five or six photographs and made an extrajudicial identification of the rifle bearer. The chief police investigator had selected these photographs upon the basis of Jones' description. Jones said one photograph was that of the rifle bearer. Following such identification appellant was arrested and charged with the crime of robbery.

In court at the trial, Jones independently identified defendant Killebrew as the rifle bearer. He stated, "I see the man who was there that night with the rifle, in the courtroom, with a purple turtleneck over there".

On appeal in this Court, defendant asserts (1) that the method of his identification was so suggestive and conducive to irreparable mistake that defendant was denied due process of law, (2) that the introduction of photographs characterized as "mug shots" prejudiced the defendant's right to a fair trial, and (3) that defendant was not proven guilty beyond a reasonable doubt if the identification was eliminated.

■■ The defendant was in custody from the time of the arrest until the time of the trial in July of 1969. Defendant argues that although a line-up is a more accurate means of allowing identification than a review of

photographs, he was never presented in a line-up. He also asserts, that of all the photographs used by the police inspector, only one (his own) depicted a clean-shaven person, and, therefore, that the photographs were suggestive. As to this matter we have examined the photographs in evidence in this cause and find that all of the persons depicted appear to be clean-shaven and that there was nothing suggestive in the photographs themselves.

■■ On the question of identification through a line-up, the courts have indicated that a suspect is not required to be brought before a line-up when he was not in custody when the initial identification was made. The complaining witness had a good opportunity to view the rifle-bearing assailant. The witness made a positive identification from photographs within 45 minutes following the crime. He also independently identified the rifle bearer when he was in open court. We find nothing to substantiate any suggestion that the police ever influenced the victim to select any particular photograph. We, therefore, find nothing in the record to sustain the contention that the method of identification was unnecessarily suggestive or improper.

■■ In the course of the trial, the appellant did not object to the admission of the prosecution's identification testimony. The testimony consisted of both in-court identification and also testimony concerning the extrajudicial identification which was made through the use of photographs. The only objection made by defendant's counsel was to the admission of the physical evidence consisting of the five photographs which Jones allegedly viewed on the night of the crime. Defendant now stresses that although the police investigator was unable to state positively that the four photographs other than appellant's were those which were shown to Jones when Jones initially identified the rifle bearer, all five photographs nevertheless were admitted in evidence. As we have indicated, from our own view of the photographs, we do not believe their admission could prejudice defendant, and, in view of the fact that Jones made his identification almost immediately following the crime and followed this with an independent identification of defendant at the trial, we do not consider the photographs as such to have been persuasive, suggestive or misleading. The circumstance that there was no objection to Jones' identification testimony at the trial, we believe, stems from the fact that the objection, in any event, would have had little merit. We find no basis for concluding that the photographic identification was suggestive or improper in any manner and see no sound basis for reversal in this cause. (See *People v. Fox*, 48 Ill.2d 239, 269 N.E.2d 720.)

■■ Defendant in this cause has asserted that *People v. Holiday*, 47 Ill.2d 300, 265 N.E.2d 634, establishes a basis for reversal in this cause.

We do not agree. The *Holiday* case involved identification from photographs of defendant who was in custody at the time of the identification. In the cause before us, the extrajudicial identification of defendant took place before defendant was arrested. As we have observed in previous cases, identification by means of use of photographs was practically the only feasible means of allowing identification of the rifle bearer under the circumstances in this case. In the *Holiday* case it is suggested that when the initial identification of a subject who is in custody is to be made, a line-up is preferable to photographs. We do not interpret the *Holiday* case to suggest that a suspect's subsequent incarceration following identification precludes reference to photographic identification which was made prior to the time he was arrested.

■■ Defendant also asserts that the prosecution's characterization of the photographs as "mug shots" was so prejudicial as to prevent defendant from receiving a fair trial. The chief investigator who testified on direct examination referred once to the pictures as "mug shots" and stated once that he had obtained them from the "mug file books". The prosecuting attorney referred once to the pictures as "mug shots" during his closing argument, but he immediately corrected himself and, thereafter, used only the word "photographs". While the effect upon the fairness of the trial and not the motivation with which the references were made is always important, the references by the prosecution appear to have been benign and inadvertent. We do not believe there is anything in these references which could have inflamed or prejudiced the jury. We particularly conclude that this is the case since appellant did not object at the time to the use of such expression, nor did he request a court instruction for the jury to disregard it.

■■ If the words complained of did attain significance, they only did so as the result of defendant's detailed cross-examination of the investigator. Defendant's attorney inquired specifically and at length about the origin of the pictures. Even after he directed questions which elicited information that the pictures were of arrested persons, he still pursued this line of interrogation. It is obvious that defendant cannot now complain that testimony which was so completely elicited by his own counsel was improper or that the prosecution should bear the responsibility for it. Under such circumstances defendant is estopped from objecting on such ground. (*People v. Burage*, 23 Ill.2d 280, 178 N.E.2d 389, *cert.* den. 369 U.S. 808.) On the basis of an examination of the entire record with respect to the use of the expressions, we do not believe that the use of the words complained of by the prosecution constituted reversible error.

In view of the fact that the identification testimony in our judgment was properly admitted, it is apparent that there was sufficient evidence

to sustain the conviction of defendant. Accordingly, the judgment of the Circuit Court of Kankakee County will be affirmed.

Judgment affirmed.

DIXON, J., concurs.

Mr. PRESIDING JUSTICE STOUDER, dissenting:

I do not agree with the majority of the court. In my opinion the admission of the mug shots was prejudicially erroneous. As an initial observation I do not believe there is any significant difference between the photograps, the admission of which is approved by the majority, and the photographs in *People v. Hawkins* (1972), 4 Ill.App.3d 471, the admission of which was held to be erroneous. What was said in the *Hawkins* case regarding mug shots and their admissibility is equally applicable to the facts of this case and in my judgment requires an opposite result.

Rogues' gallery photographs or mug shots usually refer to photographs in the files of a law enforcement agency prior to the time of the arrest of the accused. The gist of the prejudice as described in the *Hawkins* case is the fact that the photos communicated to the jury the defendant's prior difficulties with the law. It is the communication of the prior troubles and not the particular form of the mug shots which gives the photographs their prejudicial effect.

In the case at bar there is no doubt but what the five photos were mug shots, that Jones, the victim, knew that they were mug shots when he examined them and that his direct testimony regarding the exhibition of the photographs to him revealed to the jury that the photographs were mug shots. Their admission as exhibits was proposed at the close of the victim's testimony and even the photographs themselves convey the information that they purport to be exactly what they are. Indeed neither in this court nor in the trial court did the State claim that the photographs were not mug shots or that the jury could have had any doubts that they were. The absence of an identification number or date as was included on the photos in the *Hawkins* case is not a significant difference which eliminates the prejudicial effect of the photographs. If the photos are mug shots and this fact is or can be communicated to the jury from their appearance or the surrounding testimony the jury is invited to speculate about the nature and extent of defendant's prior troubles with the law depriving him of his right to have the evidence limited to that relating to his guilt of the crime for which he stands charged.

I find no waiver or estoppel regarding the admissibility of the photographs as does the majority. The facts as disclosed in the majority opinion

reveal that it was the victim who first revealed that his identification had been from photographs in the possession of the police and in fact the ones presented as exhibits. Such testimony was the foundation for admitting the photographs and precipitated the cross-examination and subsequent testimony with regard thereto. If it is proper to communicate the fact of defendant's prior trouble with the law by the admission of mug shots I fail to see how the State's Attorney's argument to the same effect can be error. Conversely if the argument of the State's Attorney can be improper the admission of the photographs conveying the same information ought to be equally improper.