(No. 42250.-▮▮▮▮▮▮)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. STEVE McCORRY, Appellant.

*Opinion filed March 30, 1972.*

GERALD W. GETTY, Public Defender, of Chicago (ELLIOT M. SAMUELS and JAMES J. DOHERTY, Assistant Public Defenders, of counsel), for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago (JAMES B. ZAGEL, Assistant Attorney General, and ROBERT A. NOVELLE and GEORGE PAPPAS, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Steve McCorry and Thomas Holiday were convicted of murder in a Cook County circuit court jury trial. Each received a sentence of 75 to 100 years in the penitentiary. Defendant McCorry brings this separate appeal alleging that: (1) the pretrial identification procedure devised by police was grossly suggestive and conducive to misidentification, thereby depriving him of due process of law; (2) numerous prejudicial trial errors were committed; and (3) he was not proved guilty beyond a reasonable doubt.

A substantial portion of the facts are recited in the Holiday appeal *(People v. Holiday (1970), 47 Ill.2d 300)*

and need not be repeated here, but we find additional facts and circumstances are necessary for consideration of this appeal.

While at Provident Hospital at approximately 2:15 A.M., Sharon Lee described the youth who left the scene and returned with the gunman, as being 5 feet 10 inches tall with light brown skin and a "natural" hairstyle, and wearing a purple long-sleeved sweater, purple pants and dark shoes.

Shortly after the shooting, Officer David Jackson arrived at the scene and was informed of the prior events by a motorist, later identified as Ernest Robinson. On cross-examination, Officer Jackson testified that this motorist described one of the assailants as being light skinned with bushy hair and wearing a purple shirt and light blue-purple iridescent pants. The officer then resumed his patrol and approximately two blocks from the scene saw the defendant whose clothing matched the description given by the witness, Ernest Robinson. Jackson turned his patrol car around to follow the defendant who hurried across the street and entered a restaurant. He followed the defendant into the restaurant and observed him going to the kitchen door and unsuccessfully attempting to open it. The defendant then turned and sat on a stool. He was placed in the patrol car by the officer and taken to the waiting room of Provident Hospital where he was told to sit on one of the several benches. The officer then stationed himself about five feet away and informed other officers that he had a suspect in custody. It is uncertain as to the number of people in the room at this time, but testimony reveals that at least five and possibly fifteen or more persons were present. Defendant claimed that all these people were elderly, although Officer Jackson stated four other persons were seated on the bench with defendant, and two of them were young with "natural" hairstyles. After being informed by police that she was to view someone, Sharon Lee entered the room,

looked about and then identified defendant as the one who returned with the gunman. A motion to suppress this identification testimony was denied at a pretrial hearing.

Sharon Lee stated at trial that she was only a few feet away from the fight, thus enabling her to see the faces of her husband's attackers. She claimed that defendant was present for several minutes before he left to get his "heat." Moreover, because of the street lights at the murder scene, she asserted that "you could see anything you wanted to see."

Defendant, citing *Stovall v. Denno (1967), 388 U.S. 293, 18 L.Ed.2d 1199, 87 S.Ct. 1967,* and *People v. Blumenshine (1969), 42 Ill.2d 508,* now argues that the pretrial identification procedure which occurred in the hospital waiting room was unnecessarily suggestive and may have tainted Sharon Lee's in-court identification. He requests that his conviction be vacated and remanded for a hearing to determine the origin of the witness's in-court identification. He bases this contention on the fact that Officer Jackson was standing near him at the time of the confrontation, he was the only youth in the room wearing loud, purple clothing and Sharon Lee was informed she was to view someone in the room. He claims that under these circumstances a fair identification was impossible.

A conviction resting upon an in-court identification which may be the product of an unnecessarily suggestive pretrial identification procedure is impermissible *(People v. Lee (1969), 44 Ill.2d 161).* As we have stated, "the question to be determined is whether under all the facts and circumstances the pretrial identification was accomplished through procedures so fundamentally unfair as to deprive defendant of his constitutional rights and, in this regard, it must be shown by the defendant that the identification procedure employed was so conducive to misidentification as to deprive an accused of due process of law." *(People v. Catlett (1971), 48 Ill.2d 56, 62.)* However, not every "show up" will be considered a denial

of due process because of saving circumstances such as the witness's excellent opportunity to view the defendant during the commission of the crime. *People v. Catlett, 48 Ill.2d 56; People v. Martin (1970), 47 Ill.2d 331; People v. Speck (1968), 41 Ill.2d 177.*

Here, Officer Jackson, based upon information he received from other officers and from Ernest Robinson, knew that shots had been fired and that a victim had been beaten and apparently taken to the hospital. After receiving the descriptions of several of the assailants, Jackson resumed his patrol and apprehended defendant who was taken to the hospital where the alleged suggestive identification took place.

In the present case Sharon Lee had an opportunity to view defendant McCorry for several minutes under adequate lighting at a distance of several feet, and there apparently was no substantial physical variance between her description of defendant and his actual appearance. Moreover, her hospital identification occurred shortly after the shooting. (See *People v. Hudson (1970), 46 Ill.2d 177,189.*) In view of the totality of the circumstances, we do not believe that the hospital confrontation led to any misidentification of defendant in the present case.

Defendant further contends that numerous prejudicial errors were committed in the admission of certain witnesses' testimony and remarks by the prosecutor in closing argument. The first objection is to the prosecutor's opening statement to the jury that intimated that Sharon Lee was pregnant at the time of her husband's death. The trial court sustained a defense objection to this statement and instructed the jury to disregard it. The identical issue was raised in Thomas Holiday's appeal briefs and summarily dismissed as without merit. *(People v. Holiday, 47 Ill.2d 300, 311; People v. Wilson, 51 Ill.2d 302.)* We find that defendant's contention here is equally without merit.

It is further argued that testimony, indicating that the State's witnesses feared for their personal safety because

they testified against him, deprived defendant of a fair trial. The first instance cited by defendant concerns the testimony of deceased's mother-in-law who, in response to a general question as to what she told the police, stated: "I asked the police not to give my address because I didn't want any members of the gang—". Defense counsel's objection was sustained at this point. The witness's statement was abbreviated by the objection and we may only speculate as to what the remainder would have been had she been allowed to continue. We believe that the substance of the statement itself was not of such a prejudicial nature as to require reversal.

The second instance of which defendant complains concerns the testimony of Ernest Robinson. In response to the question of whether he, Robinson, told Officer Jackson what he observed that night, Robinson said, "I told him what I saw but I was reluctant toward giving my name and address for fear there might be some possible—". Over defense objection Robinson then continued: "I was reluctant toward giving him my name and address." It is clear from the record that this testimony was not responsive to the question nor elicited by the prosecutor. (See *People v. Naujokas (1962), 25 Ill.2d 32.*) When he was allowed to continue, the witness stated only that he did not give his name and address to Officer Jackson. This testimony did not prejudice defendant.

The final instance of which defendant complains centers about the testimony of Ernest Robinson elicited by the prosecutor on redirect examination when the witness responded to the prosecutor's question as to the reasons for his wearing dark glasses, by stating, "For fear of possible retaliation and the [defense] counsel knows that we discussed this." This line of questioning apparently resulted after cross-examination of Ernest Robinson when defense counsel asked the witness a series of questions concerning the glasses. Defendant now argues that the witness's response over defense objection on redirect

examination was highly prejudicial and the prosecution could have rehabilitated the witness by simply asking whether he was wearing glasses at the time of the shooting. This issue was also previously raised in co-defendant's appeal and was found to be without merit. *People v. Holiday, 47 Ill.2d 300, 311.*

Defendant also argues that it was improper to impeach his alibi witnesses by showing that they had not volunteered the substance of their trial testimony to the police prior to trial.

In response to the prosecutor's question on cross-examination, Wendell Ross, who testified defendant was with him the entire evening of the shooting, stated that he did not tell the arresting officer about defendant's previous activities that night. No objection to these questions was made in the trial court, thereby waiving this issue on review. *People v. Linus (1971), 48 Ill.2d 349, 355.*

On cross-examination, Anthony Manuel, a second alibi witness, was asked if he had told anyone, including the police, that defendant was not involved in the shooting. The witness, over defense objection, replied that he had not. Defendant now argues that this question was an improper attempt to impeach this alibi witness and seriously impaired that witness's testimony before the jury. In *People v. Edmunds (1964), 30 Ill.2d 538,* we reversed defendant's conviction because the trial court sustained the prosecution's objection to a defense inquiry as to whether a written statement had been given to the police, and we further stated, "The court should have permitted defendant to develop whether a statement available for impeachment *** existed, so that he [defendant] might have the benefit thereof in cross-examining these two critical witnesses for the People." (30 Ill.2d 538, at 544.) The present case presents an analogous situation. Anthony Manuel was a defense witness whose alibi testimony was crucial. In these circumstances it was permissible for the prosecution to make a threshold

inquiry into the existence of any prior statements which could have been used for impeachment.

Defendant further asserts that prejudicial error was committed when the State was allowed to "bolster" its case by the testimony of three police officers who related the circumstances of out-of-court identification made by Sharon Lee in the hospital. We need not determine whether this testimony was incompetent for no objection was made and the defendant is precluded from raising this issue on appeal. *People v. Linus, 48 Ill.2d 349; People v. Trefonas (1956), 9 Ill.2d 92.*

It is also claimed that trial error was committed when Sharon Lee was allowed to testify in detail concerning the circumstances surrounding her identification of the defendant in the hospital waiting room for this recitation had a corroborative effect upon her in-court identification. We do not agree. In a recent decision an identification witness testified at length to the facts occurring at the time of the out-of-court identification and we stated that "we do not believe the trial court erred in admitting the evidence in question as corroborating Mrs. Kuba's [identification witness] in-court identification of the accused as the robber." *(People v. Eubank (1970), 46 Ill.2d 383, 388, cert. denied, Eubank v. Illinois (1971), 402 U.S. 972, reh. den. 403 U.S. 940.)* Furthermore, we cannot conclude that defendant was prejudiced, because on direct examination he substantially corroborated this testimony in lesser detail when he testified that Sharon Lee entered the room, identified him as an assailant and collapsed.

During closing argument the prosecutor, while commenting on the testimony of Sharon Lee, stated that she said, "I never will forget their faces." After defense objection the trial court instructed the jury to disregard the comment if it was not in evidence. Defendant now contends that the comment generated sufficient prejudice requiring reversal of his conviction. It is well settled that improper remarks will not constitute reversible error unless

substantial prejudice results. *(People v. Nilsson (1970), 44 Ill.2d 244,* and cases therein cited.) We believe that the prosecutor's remark was not of such magnitude that it was a material factor in defendant's conviction. *People v. Nicholls (1969), 42 Ill.2d 91,* and cases therein cited.

He further argues that it was prejudicial error for an investigating police officer to testify that defendant exercised his constitutional rights by not giving a statement during police custodial interrogation. *(Miranda v. Arizona (1966), 384 U.S. 436, at 468, n.37, 16 L.Ed.2d 694, at 720, 86 S.Ct. 1602.)* In response to the prosecutor's question concerning the occurrences after defendant was informed of his constitutional rights, Officer William Strocchia replied that defendant denied his involvement in the shooting but did not give a statement. No objection was raised by defense counsel. In *People v. Linus, 48 Ill.2d 349, 354,* it was argued that "the trial court erred in admitting evidence of defendant's silence after he had been advised of his rights under *Miranda.* " In rejecting this argument we stated, "this contention of error is not available here to the defendant. One cannot on appeal raise the issue of the admissibility of evidence where there has not been objection to its admission during the trial." 48 Ill.2d 349, at 355.

It is also asserted that the improper conduct of the prosecutor during defendant's cross-examination deprived him of a fair trial by subjecting him to a continuous series of patently objectionable questions which indirectly conveyed the impression to the jury that the prosecutor was personally convinced of his guilt. After defendant had denied ever seeing the deceased, the prosecutor, over defense objections, repeatedly asked the defendant why he assaulted Maurice Lee, why he ran for help, and whether he was the boy in purple at the scene. The objections to this series of questions were sustained.

The method of cross-examination is improper when it introduces immaterial or collateral matters and substantial

prejudice results. *(People v. Del Prete (1936), 364 Ill. 376.)* The prosecutor's questions were not immaterial or collateral to the issue of defendant's guilt. Nor can we say that from the record the verdict would have been different had the error not occurred. *(People v. Bambulas (1969), 42 Ill.2d 419.)* The trial court sustained defense objections to this series of questions and later instructed the jury that they were to disregard any testimony to which objections had been sustained. Under these circumstances, we believe that any prejudice to defendant was obviated.

In oral argument defendant, citing *People v. Collins (1971), 49 Ill.2d 179,* contends that the tenor of the prosecutor's closing argument deprived him of a fair trial. After a careful examination of the closing argument we believe that it was not of such unfair or inaccurate quality as to require a reversal of defendant's conviction.

Defendant finally argues that he was not proved guilty beyond a reasonable doubt. We do not agree. Similar evidence was introduced to establish the guilt of these two defendants. Both defendants denied their involvement and produced alibi witnesses to establish their innocence. After reviewing the record in Holiday's appeal, we concluded that it established his guilt beyond a reasonable doubt if the identification testimony be considered as properly admitted. *(People v. Holiday, 47 Ill.2d 300, 311.)* However, in the present case we have resolved the evidentiary questions. Therefore, we affirm the judgment of the circuit court of Cook County.

*Judgment affirmed.*