The People of the State of Illinois, Plaintiff-Appellee, *v.* Steven Arthur Camel, Defendant-Appellant.

(No. 11545;

Fourth District—April 12, 1973.

Robert I. Auler, of Champaign, for appellant.

Lawrence E. Johnson, State's Attorney, of Urbana, (Thomas L. Knight, Assistant State's Attorney, and Robert Wennerholm and L. Keith Hayes, Jr., Senior Law Students, of counsel,) for the People.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

The Defendant-Appellant, Steven Arthur Camel, was convicted, after bench trial, of rape, deviate sexual assault, aggravated kidnapping, and indecent liberties with a child. He was sentenced on the rape, aggravated kidnapping and deviate sexual assault convictions but not on the conviction of indecent liberties, and all sentences imposed were to run concurrently. The defendant appealed from all of the convictions.

The complaining witness was Nancy Shakeshaft, who was 15 years of age at the time. The case of the People depended almost entirely upon her testimony though there is some corroborative evidence. One of the crucial issues in the case was the identification of the defendant. The record discloses that Nancy left the Edison Junior High School in the City of Champaign shortly after 4 o'clock P.M., on the afternoon of March 23, 1970. She walked south on the east side of Prospect Street and observed an individual standing in the middle of the sidewalk near the end of the block. As she started to walk around him he grabbed her by the arm "hard" and turned to face her. His face was partially covered by a scarf. It was getting dusk but was still light. A conversation between them ensued. The defendant asked where the University was, Nancy inquired "What part of the University?" He responded "Just the University?" to which she replied, "I can't help you." The defendant then stated that he had a gun and that he wanted her coat and money. Nancy told him he could have it. He then told her that he could not take the items on a street which was as busy as Prospect and that he was going to take her to a car and told her to close her eyes which she proceeded to do. After she got into the car she was forced to lie down on the seat and keep her eyes closed. She was then driven to another place, forced to remove her panty hose, her hands were tied behind her back, she was blindfolded, and the acts which gave rise to the charges in question were committed. After commencing her walk to the car, Nancy did not again see her assailant.

The trial court had ordered, prior to trial, the production of the statements of witnesses, and in response to that order the People produced no statement taken of Nancy Shakeshaft. We remanded this cause to the trial court with directions to conduct an evidentiary hearing to determine whether or not such a statement was in existence, either at the time of the entry of the order or at the time of the trial of the cause on the merits. (*People v. Camel*, 4 Ill.App.3d 106, 280 N.E.2d 294.) Pursuant to that direction, the trial court conducted an evidentiary hearing, found that no record of a verbatim or substantially verbatim statement given by Nancy to any police officer, State's Attorney, or member of his staff, was in existence on the date of the entry of the discovery order, or at the time of the trial of the case. Pursuant to our order, the trial judge certified that finding to this court together with a transcript of the evidentiary hearing.

The evidentiary hearing focused upon two documents identified as Peoples' Group Exhibit A and Peoples' Exhibit B. Peoples' Exhibit B consists of a one-page document containing notes made at the time of an

interview of Nancy Shakeshaft on March 27, 1970. The interview was conducted by Officers Dawkins and Voss of the Champaign Police Department. Officer Dawkins asked the question and Officer Voss made the notations which appear on the exhibit. The exhibit was not signed by Nancy nor was it ever shown to her, and Officer Voss testified that he did not intend to take a "formal statement"; that he was primarily looking for a *modus operandi* and a description of the attacker. During the evidentiary hearing on the exhibit, Officer Dawkins, Officer Voss and Nancy Shakeshaft testified as to Exhibit B. We have made a line-by-line comparison of the contents of Exhibit B with the testimony of Officer Dawkins, Officer Voss and Nancy Shakeshaft, and hold that a significant portion of the statement is a record of a verbatim or substantially verbatim statement given by Nancy at the time. This has been an exceedingly tedious, and difficult analysis to make by reason of the fact that in some instances, Officer Dawkins and Officer Voss were asked about some of the items contained in Exhibit B but Nancy was not. In some instances Officer Voss was asked about items in the statement, so was Nancy, and Officer Dawkins was not; and in some instances Nancy was asked about items contained in the statement and neither Dawkins nor Voss were asked. But it is clear that a substantial portion of the statement was recorded in language verbatim or substantially verbatim and it should have been produced. For example, the statement describes Nancy's assailant's eyes as dark brown. Dawkins testified that that was what Nancy said and Voss testified that he accurately recorded that response. Nancy was not asked. The statement describes the assailant's hair as being "curly, long hair down to eyebrows". Dawkins testified that that was the description she gave of her attacker. Voss testified that he accurately recorded that response. Nancy was not questioned about that item. The statement described the assailant as having a "voice low and deep, hoarse". Officer Dawkins testified that that was the way she described it; Officer Voss said that was his way of describing the voice but then testified that Nancy said the voice had a low tone, it was deep and sounded hoarse, or perhaps an accent. Nancy testified that she never said that the voice was low, deep and hoarse but that she told the officers "his voice was * * * he had a hoarsy voice and it was real deep and low".

By the same method of analysis, it is clear that some portions of the statement are not verbatim or substantially so. For example, the statement described the attacker's height as 5'10 to 5'11—Voss testified that this was not something Nancy said but rather something she deduced, that she told the officers that the attacker was not as tall as Officer

Voss but between his height and that of Officer Dawkins and her father and that the officers thus arrived at the height figure. Nancy testified to the same effect.

The statement also noted that the car in question was heading east on Daniel Street. Dawkins testified that "This is the way she described it". Voss testified that Nancy did not say that but that "we figured that out" and Nancy testified that she never said the car was heading east on Daniel but that "Voss deduced that".

Peoples' Group Exhibit A is a police report prepared by officers who were investigating the case and contains notes made by the officers as a result of two interviews had with Nancy on the date of the occurrence. The report is three pages long and Officers Brady and Nelson of the Champaign Police Department and Nancy Shakeshaft testified with reference to the exhibit. Again, we have made a line-by-line comparison of the contents of the statement with the testimony of the three witnesses. Again, this was a long, tedious and time-consuming process and the same pattern appears as that which became apparent in our analysis of Exhibit B. In other words, some items contained in the report were not mentioned at all in the examination of the witnesses; testimony as to some items or sentences were elicited from one, two, or all three witnesses. However, this analysis of Group Exhibit A establishes that a significant portion of this exhibit also accurately records verbatim or substantially verbatim statements of Nancy Shakeshaft. For example, she described her assailant's hair as black and curly according to Officers Brown and Nelson. She described her assailant as having rough hands with long fingers, as having coughed a lot, as wearing a stocking cap that was red or blue, as having a red wool scarf on the lower part of his face. That the radio in the car was on WLS; that there were silver push buttons on the door handles of the car. As was true of the other exhibit, there are items contained in Group Exhibit A which are not recorded verbatim or substantially verbatim in the language of Nancy. For example, the statement indicates that the assailant was 6' tall. Officer Brady testified that this was an estimate on the part of the police based upon the height of Nancy's father which she compared, and Nancy testified that she did not say that the defendant was 6' tall. The statement indicates the age of the defendant to be "late 20's or 30's". Officer Brady testified that this was a deduction on the part of the police that he didn't recall Nancy describing his age. Officer Nelson was not questioned about this item. Nancy testified that she told the police just what her assailant said, "*   *   * that he was 35". That she said nothing about 20's or 30's, etc. This statement too should have been produced. Among other things, what emerges from an analysis of Group Exhibit A and

Exhibit B, is a rather complete description of Nancy's assailant set forth in language verbatim or substantially verbatim and thus bearing directly upon a crucial issue.

The record indicates that the State's Attorney never made inquiry of the Police Department as to the existence of the statements. Other documents in the possession of the Police Department were also produced, but the evidence clearly fails to establish that they constituted a record of verbatim or substantially verbatim statements made by Nancy.

■■ As we observed in *People v. Camel*, 4 Ill.App.3d 106, 280 N.E.2d 294, "That statements of witnesses are discoverable and available to defendants for purposes of impeachment is too firmly established to require citation of the many cases both Federal and State, including Illinois, which followed the decision in *Jencks v. United States*, 353 U.S. 657, 1 L.Ed.2d 1103, 77 S.Ct. 1007." The statements in question should have been made available to defendant and the failure to do so is error. We do observe that the clear probability that statements were in existence was elicited, during the trial, by defendant's counsel during his cross-examination of the complaining witness. It is unfortunate that he did not renew his demand at that time. As we noted in our prior opinion in this case the failure to produce the statements in question, under the rule enunciated by the Supreme Court of this State in *People v. Sumner*, 43 Ill.2d 228, 252 N.E.2d 534, admits of but one result here. We must reverse and remand for new trial. Under *Sumner* we are not permitted to compare the testimony given at the trial with the contents of the statements with a view to ascertaining whether or not they were in fact impeaching. The rule in *Jencks* as implemented by *Sumner* (and further by Supreme Court Rule 412) is not new, and when compliance is not had a reviewing court has no alternative but to reverse and remand for new trial. In view of the clear, unequivocal mandate of *Sumner* it is hopefully unnecessary to further emphasize its importance and the certainty of the result which obtains from failure to comply.

On remand it would seem appropriate for the trial judge to insist, prior to trial, that counsel analyze these statements as we have, and in the event that an item is endeavored to be used for purposes of impeachment, to thus be prepared to assist the court in its rulings by promptly demonstrating the testimony of each witness as to that specific item.

■■■ On March 30th, one week after the incident in question, Nancy Shakeshaft was taken to the Champaign Police Station. She was shown the defendant on a television screen and identified him. No other suspect was shown to her. She identified the defendant as her attacker. Subsequently, while at the station, she was shown two polaroid photos of the defendant, a front and side view, and repeated the identification, no

other photos were shown to her. Defendant urges that Nancy's in-court identification of the defendant was tainted by these suggestive procedures and should have been suppressed, and that her opportunity to observe the defendant was so limited that the identification will not support the conviction, citing on the latter point *People v. Thompson,* 121 Ill.App.2d 163, 257 N.E.2d 197. The factual distinctions between Thompson and this case are so marked as to require only passing comment. In *Thompson,* the attack occurred at 11:00 P.M., and the victim was seized from behind. Here, the hour was shortly after 4:25 P.M., and while dusk, it was still light. Here defendant and Nancy were face to face while the above indicated conversation took place. In *Thompson* the witness was unable to describe her assailant's height, dress, weight, or to give any description of him. In this case Nancy was able to, and did, furnish to the police a rather detailed and specific description of her assailant. The period of time during which she was face to face with her attacker goes to the weight of her testimony and we cannot, as a matter of law, hold that her opportunity to view was so restricted that reversal on this point is warranted.

■■ We also note that Nancy's description of her attacker was given to the police prior to her view of the defendant and the photographs at the police station, and that her in-court identification of Camel clearly had its origin independent of the pretrial confrontation and view of the photographs, and that the origin predated the view in question in point of time. It was not error to admit the identification during the trial by the testimony of Nancy Shakeshaft. *People v. Stringer,* 52 Ill.2d 564, 289 N.E.2d 631; *People v. McCorry,* 51 Ill.2d 343, 282 N.E.2d 425; *People v. McMath,* 45 Ill.2d 33, 256 N.E.2d 835.

There are numerous other assignments of error which we need not consider since the case must be retried. The ruling of the trial court that Group Exhibit A and Exhibit B are not verbatim or substantially verbatim statements of Nancy Shakeshaft is reversed for the reasons above indicated. The cause is remanded with directions to afford the defendant a new trial.

Reversed and remanded with directions.

CRAVEN, P. J., and SMITH, J., concur.