People of the State of Illinois, Plaintiff-Appellee, v. Alfred Armstrong and Jerry Sumlin, Defendants-Appellants.

Gen. Nos. 52,995, 52,996. (Consolidated.)

First District, Fourth Division.

July 31, 1970.

Melvin B. Goldberg, of Chicago, for appellants.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James Veldman, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

OFFENSE CHARGED

Armed robbery. Ill Rev Stats 1963, c 38, § 18–2.

JUDGMENT

After a jury trial, both defendants were found guilty and sentenced to terms of 15 to 20 years (Armstrong) and 10 to 15 years (Sumlin), to run consecutively with defendants' prior sentences for murder, if the latter are finally upheld.

DEFENDANTS' CONTENTIONS ON APPEAL

1. Defendants were denied due process of law by being prosecuted and convicted twice for the same conduct.

2. The trial court erred when it denied defendants' pretrial motion to prohibit the State's use of a prior murder conviction for impeachment purposes.

3. The trial court erred in refusing one of defendants' tendered jury instructions.

4. The sentences imposed on defendants are excessive.

5. Defendant Armstrong was denied adequate representation by counsel.

EVIDENCE

Emil Misiunas, for the State:

On April 18 and 19, 1966, he owned a tavern at 2419 West Marquette Road. At around 10:30 to 11:00 p. m., on the 18th, he was at the tavern when Charles Sizemore arrived. Sizemore's wife came about midnight. They were the only persons present, and he was serving them. During the evening, Sizemore had four or five seven-ounce beers and his wife had one or two. At approximately 1:00 a. m., on April 19, three men entered the premises. One man, who was short, ran by him toward the cooler. Another, identified as defendant Armstrong, held a shotgun and said, "Hands up and don't look

around." Armstrong also told the customers to keep their hands on the bar. The witness kept watching the man with the shotgun until the third man, identified as defendant Sumlin, came behind the bar. Sumlin asked him where the gun was, so he turned and faced Sumlin and told him he had no gun. Sumlin then told him to open the cash register and took money from his shirt pocket and bottles from the bar. He heard the short man say that he discovered some whiskey cases in the storage room, and Armstrong said, "All right, take it."

Armstrong then ordered the witness to come out from behind the bar and face the wall alongside the customers. Then Armstrong ordered all three into the washroom and told them to stay there. A few minutes later, the witness opened the door of the washroom, saw that defendants were gone, and called the police.

He testified that the tavern was well lit, bright enough to "read a newspaper on the bar." He couldn't tell what color clothes the three men were wearing because he was "scared," not because it was too dark. He identified both defendants in a lineup the day after the occurrence.

Charles Sizemore, for the State:

He was in the tavern on the night in question when four fellows came in and defendant Armstrong, slamming shut the bolt on a shotgun, said, "It is a holdup. Put your hands on the bar." Defendant Sumlin went behind the bar to the cash register. Another went to the back room and the fourth began taking bottles off the back bar.

Armstrong then took the witness' wallet, and asked for and took money from his wife's purse. He was told by Armstrong to get up and face the wall and was then made to get in the washroom. He heard some noise, the slam of the front door, and, after waiting for a few minutes, came out and called the police. The bar was lit well enough to see people's faces.

460

He identified both defendants in a lineup on the night following the occurrence.

Loretta Sizemore, for the State:

Her testimony was substantially similar to that of her husband.

Eunice Sumlin, on behalf of defendant Sumlin:

She is the mother of Jerry Sumlin and attested to his good reputation for "peaceableness and lawabidingness."

OPINION

Defendants initially contend that they were denied due process of law by being prosecuted twice for the same criminal conduct. In order to understand the context of defendants' argument, it is necessary to consider the appropriate facts as set forth in defendants' brief, although they are not to be found in this record. On the night of April 18 and 19, 1966, defendants robbed Misiunas' tavern, robbed another tavern, and shot and killed an off-duty policeman in an attempted robbery of yet a third tavern. All three crimes occurred within a short distance and a short time of one another. Three indictments were returned and the one for felony-murder was tried in September, 1966. Both defendants were convicted. Sumlin's conviction was affirmed, while Armstrong's was reversed and the cause as to him remanded for a new trial. People v. Armstrong (Sumlin), 41 Ill2d 390, 243 NE2d 825. The instant case was brought to trial in November, 1967.

The Illinois Criminal Code provides the following pattern for multiple prosecutions:

(a) When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense.

(b) If the several offenses are known to the proper prosecuting officer at the time of commenc-

461

ing the prosecution and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution, except as provided in Subsection (c), if they are based on the same act.

(c) When 2 or more offenses are charged as required by Subsection (b), the court in the interest of justice may order that one or more of such charges shall be tried separately.

Ill Rev Stats 1965, c 38, § 3–3.

■ Defendants argue that the State was bound to prosecute "all known related indictments" at the first trial. This contention is without merit, as the statute merely requires that multiple offenses "based on the same act" must be tried together. See the Committee Comments to the above-quoted statute, where it is stated that "Section 3–3 is not intended to cover the situation in which several offenses . . . arise from a series of acts which are closely related with respect to the offender's single purpose or plan." SHA, c 38, § 3–3.

Defendants place reliance on People v. Golson, 32 Ill2d 398, 207 NE2d 68, and People v. Mullenhoff, 33 Ill2d 445, 211 NE2d 744. However, there are pertinent factual differences between those cases and the case at bar. In Golson, the court, in reversing the conviction of the defendants in a second trial, commented that "these defendants engaged in but a single act of misconduct." Golson, supra, at 412. They had been tried under the felony-murder doctrine for two murders, and neither had been physically responsible for the simultaneous deaths. (Felony-murder is now part of the Criminal Code. Ill Rev Stats 1963, c 38, § 9–1(3).) Mullenhoff also involved a single act, for which defendant was tried separately for deviate sexual assault and attempted rape. The court invoked the "fundamental unfairness" doctrine (Ciucci v. Illinois, 356 US 571; Golson, supra), in holding that the State was barred by the first acquittal from proceeding on the second offense.

■ The separate trials under our consideration, however, resulted from separate and distinct acts of defendants. The evidence in the two causes was completely different, and the offenses were committed in two separate taverns at different, albeit closely related, times. See People v. Calloway, 74 Ill App2d 418, 429–30, 221 NE2d 73. We hold that defendants' rights were not violated because they were prosecuted for the criminal act which is the subject of this case, it being separate and distinct from the act for which they had previously been convicted.

■ Defendants' next contention is that the trial court erred by denying their pretrial motion that would have prevented the State from introducing evidence of defendants' prior murder convictions, for the purpose of impeaching defendants as witnesses if they were to testify. Defendants claim that this effectively denied their right to testify in contravention of their constitutional right to due process of law. The record, in fact, shows that defendants did not testify on their own behalf and, correspondingly, that evidence of the convictions was not offered at trial. Therefore, we believe that defendants' claim that they were effectively denied their right to testify, is mere conjecture. Defendants opted not to testify for reasons not apparent in the record, and speculation will not serve as a legitimate basis for reversal of this appeal.

■ The issue, however, remains as to whether the trial court erred in denying defendants' motion, particularly in view of the fact that their murder convictions were pending on appeal. This question was recently answered in People v. Bey, 42 Ill2d 139, 246 NE2d 287, where the court held such impeachment to have been proper, stating at page 146:

> The statutory provision allowing prior convictions to be shown for the purpose of affecting the witness's credibility makes no mention of convictions

463

on appeal. (Ill Rev Stats 1965, ch 38, par 155–1.) Even in this day of virtually automatic appeals, the judgment of the trial court is still a determination of guilt which stands until it is reversed.

We hold that the trial court's ruling was proper, given the circumstances of this case.

Defendants claim that the court erred in refusing to give the following instruction to the jury:

> The Court instructs the jury that it is your duty to resolve all facts and circumstances in evidence on the theory of innocence rather than guilt, if that reasonably may be done.

■ Our review of the record indicates that three instructions (all tendered by defendants) were given to the jury pertaining to the presumption of innocence and the State's burden of proving guilt beyond a reasonable doubt. We believe that when the instructions are considered as a whole—as they properly should be—the jury was adequately informed as to the applicable law. The refused instruction would not have added to the jury's understanding of the law, and, on account of its repetitive effect alone, it should not have been given. See People v. Burns, 300 Ill 361, 365, 133 NE 263; People v. Payne, 77 Ill App2d 55, 221 NE2d 778; People v. Dilworth, 67 Ill App2d 384, 214 NE2d 9.

Defendants also contend that their sentences are excessive, objecting especially to the court's directive that the sentences run consecutively with defendants' prior convictions for murder, if such convictions are finally upheld. They ask that this court exercise its power to make the sentences concurrent with the prior sentences and also to reduce them. Supreme Court Rule 615; Ill Rev Stats 1967, c 110A, § 615(b) (4).

■ Section 1–7(m) of the Criminal Code (Ill Rev Stats 1967, c 38, § 1–7(m)) provides that the court in its

discretion may impose consecutive sentences "when a person shall have been convicted of 2 or more offenses which did not result from the same conduct . . ." See People ex rel. Starks v. Frye, 39 Ill2d 119, 233 NE2d 413. We have already determined that defendants' convictions resulted from separate and distinct acts or conduct, and we find no basis for disturbing the trial court's exercise of its discretion in imposing consecutive sentences. "The sentence imposed was within the statutory limits and will not be disturbed unless it constitutes a clear departure from fundamental law or is not proportioned to the nature of the offense." People v. Gold, 38 Ill2d 510, 518, 232 NE2d 702. It was brought out, in the hearing in aggravation and mitigation, that both defendants had criminal records other than their prior murder convictions. The trial judge stated that he was not considering the murder convictions as matters in aggravation in view of the fact that they were pending on appeal. We believe that a sound determination was made by the court concerning the punishment to be imposed, and we will not modify that penalty.

Defendant Armstrong finally contends that he was denied adequate representation by counsel. His specific objections are twofold: first, the Public Defender's unwarranted delay in proceeding to trial deprived him of his right to a speedy trial; second, the Public Defender who represented him at trial did not have sufficient time to prepare his case adequately.

Armstrong was arrested on April 19, 1966. The trial on the murder indictment commenced on September 12, 1966, and the instant trial began on November 2, 1967. The instant record is replete with motions for continuance, some requested by the prosecution and others by defense counsel. Armstrong himself delayed the proceedings on several occasions by moving for substitution of judges and appointment of private counsel.

It is also worthy of note that he did not make any objections to the actions of his attorney, nor did he complain of the delay.

■ Defendant relies on People v. Love, 39 Ill2d 436, 443, 235 NE2d 819, for the proposition that "delay before trial may be so prolonged that prejudice will be presumed." The court there goes on to state at page 443:

> However, in a case where it is not clear that the right to a speedy trial was denied, the fact whether the accused was or was not in fact prejudiced through delay must be importantly considered in deciding that the delay was reasonable or unreasonable.

Defendant has made no showing or claim that prejudice resulted to him by the delay in this case. Under the circumstances, we cannot say that "prejudice will be presumed," and, absent any showing of prejudice, we believe that defendant's right to a speedy trial and right to due process have not been violated.

■ Defendant Armstrong also claims that the Public Defender did not adequately represent him at the trial. There is nothing to indicate that the Public Defender's performance showed a lack of preparation which could have affected the outcome of the case. On the contrary, a review of the record indicates that he conducted a well-prepared and thorough defense, considering the factual circumstances of the case. We find that defendant was not prejudiced in his representation by the Public Defender and that he was not denied effective assistance of counsel.

The judgment is affirmed as to both defendants.

Affirmed.

DRUCKER and LEIGHTON, JJ., concur.