THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* REGINALD DEVON FLOWERS, Defendant-Appellant.

(No. 70-178;

Third District—September 27, 1972.

*Rehearing denied October 10, 1972.*

DIXON, J., partially dissenting.

John L. Barton, of Defender Project, for appellant.

Edward P. Drolet, State's Attorney, of Kankakee, for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Defendant was found guilty by a jury in Kankakee County of the crime of armed robbery. Judgment was entered thereon and defendant sentenced to serve a term of four to seven years in the penitentiary.

On December 22, 1969, at about 1:30 P.M. an armed robbery was committed in a store known as Rudy's Market. The robber entered the store and after a brief discussion with the store manager, Larry Enz, revealed a sawed off shotgun under his coat and advised Enz it was a hold up. The two went to the courtesy booth and advised the cashier, Mabel Owen, to take the money from the cash register and put it into a paper bag. She complied and Enz and the hold up man, who insisted on more money, went to the office where Enz removed money from the safe and put it into a bag. The two of them then walked out of the store, side by side, and around to the back of the store. Donald Nelson, a salesman who serviced the store, was present both inside and later outside the store and saw Enz and the robber while they were together, however, he was unaware that a robbery was taking place. He testified as to seeing the two in the store and that as he passed them outside the store he exchanged greetings with them.

Prior to trial defendant filed a motion to suppress in-court identification of the defendant. The court denied the motion and denied defendant a hearing on the motion, advising that the motion could be taken up at trial. The trial court, believing that the motion to suppress had been heard and denied, refused to consider the motion. Subsequent to trial the trial judge discovered the error and hearing was then held on that motion. No point is raised in regard to this procedure, however, defendant contends that the methods of identification employed by the police were impermissibly suggestive and that it was prejudicial error to admit evidence based thereon.

At the hearing on the motion to suppress Sgt. Chaney of the Kankakee Police Department testified that one Larry Hawkins was identified as being in the store at the time of the hold up but was not involved in the same. Hawkins apparently had a criminal record and was suspected of having committed the crime. He was questioned immediately thereafter and according to Chaney advised him that he had witnessed the hold up. He identified the defendant as the participant. It was ascertained

that the defendant worked at Uniroyal, a plant located in the Kankakee area. Chaney testified that his office had no photos of defendant and he went to Uniroyal where he obtained a colored photograph of the defendant taken from the plant's personnel file. He testified that he obtained the photograph either late on the evening of the 22nd of December or early in the morning on the 23rd. He then made a black and white Polaroid copy of the picture and placed it on an index card. He then removed 14 photographs from a high school yearbook and put each of the photographs on an index card and the 15 photographs were shown to Enz on the 23rd of December. He testified that by the time Enz had examined the photographs it was too late to obtain a warrant and he and another police officer "went out to locate the defendant and made the arrest."

Enz's testimony is not clear at one point as to whether the identification of the defendant made from these 15 photographs took place on the 23rd or the 24th. During the trial efforts by defense counsel to pinpoint the date were unsuccessful. He insisted the identification took place on either of the two dates, the 23rd or 24th. Subsequently at the hearing to suppress he stated he was certain the identification took place on the 23rd and based his conclusion on the fact that he attended the preliminary hearing on the 24th where he saw the defendant personally and that the identification from the photographs was made a day prior thereto. The record is clear that Enz's identification of the defendant from the photographs took place prior to defendant's arrest.

Defendant was identified at the trial by Enz, Owen and Nelson. Owen was the only other witness who made a photographic identification of the defendant prior to trial. This identification was apparently made after defendant's incarceration but the record does not indicate that her photographic identification was the same as that of Enz. The defendant was photographed after his arrest and from all that appears Owen's identification of him was from this photograph. No other attempt at identification of the defendant was made and a lineup was not employed at any time.

Defendant's argument on this point centers on whether or not defendant was in custody at the time Enz made his identification from the photographs. The record clearly indicates that the defendant was not in custody. Defendant acknowledges the need to use photographs during an investigation where the police are without knowledge of the identity of the criminal, then argues that *People v. Holiday*, 47 Ill.2d 300, 265 N.E.2d 634, governs the situation in the case at bar. In that case the Supreme Court stated:

"There is no need to resort to the use of photographs when a

suspect is available for a fair lineup, which may be expected to yield a better opportunity for observation and accurate identification."

■■ In the case at bar it cannot be said that the police were totally unaware of the identity of the criminal for Larry Hawkins had apparently advised them as to his identity. We do not think it was the obligation of the police to pick up the suspect and bring him in for the purpose of a lineup, but are more inclined to believe that the police had the duty to obtain some corroboration of Hawkins' statement before making the arrest. On the surface this appears to have been the situation.

■■ It is noted that in *People v. Holiday, supra,* the court said, quoting from *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L. Ed. 2d 1247, "that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Defendant urges that the circumstances in the case at bar were so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

The 15 photographs used by the police in their first identification of defendant by Enz are not in the record and there is no way this court can judge the quality of the photographs. It also suggests that the photograph of defendant was a glossy print while the other 14 pictures were taken from a book and that the picture of the defendant showed a man in his late 20's as opposed to 14 others of high school teenagers. If the argument has any merit this court is unable to judge, for the photographs are not available to this court for examination.

■■ In any event we do not feel that the procedure followed by the police in this case was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. All witnesses had ample opportunity to see the defendant. The record does not sustain defendant's argument on this point.

In *People v. Fox,* 48 Ill.2d 239, 269 N.E.2d 720, the court there said:

"Under these circumstances, we think the record discloses that the in-court identification of the defendant by the three witnesses had a source independent of and untainted by any viewing of the pictures of the defendant and the defendant himself at the police station on January 12, 1968. Thus there is nothing about the in-court identification which requires us to consider defendant's rights under the sixth amendment or the application of the rule of *Wade* and *Gilbert.* Furthermore, the totality of the circum-

stances here do not indicate that the identification procedures followed at the police station led to a misidentification of James Fox at the trial. Hence, there was no violation of defendant's rights under the fourteenth amendment."

In *Simmons v. United States, supra,* the Supreme Court stated when discussing the use of photographs in initial identification:

"*   *   *   [W]e hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

■■ Finally on this point defendant argues that even if the in-court identification of defendant was not tainted by the photographic identification it was nevertheless prejudicial to allow testimony by the witnesses of the photographic identification. All the evidence on this point was placed in the record by defendant's counsel on cross-examination and he cannot now be heard on this point.

Defendant next contends that he was not properly admonished of his rights to remain silent, citing *Miranda v. United States,* 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed. 2d 694, and that error was committed when a police officer testified that defendant refused to answer questions put to him.

It must be noted that the record does show defendant was admonished of his rights. The subsequent statements of defendant were not admissions of his commission of the crime but statements relating to his alibi and finally, it is noted that no objection was made by defendant at the trial to the questions nor was the court requested to strike the answers given.

The officer Sgt. Chaney testified the defendant told him that at the time of the crime he had been at home all day. He then told them that he had been to the A. & P. but that he could not remember when he left for the store nor what food he had purchased. The witness Sgt. Chaney was then asked if there was any other conversation and to this he replied, "No, sir, he wouldn't answer any more questions."

This testimony contradicted the testimony given by the defendant as to his whereabouts at the time the crime was taking place.

■ ■■ In *People v. Lee,* 44 Ill.2d 161, 254 N.E.2d 469, the court said: "Sound judicial administration requires that unless the error is so prejudicial as to deny the defendant a fair trial, it must be objected to at the trial level where it can be excluded, if necessary, or restricted within proper limits. Citing *People v. Speck,* 41

Ill.2d 177, 242 N.E.2d 208; *People v. Jordan*, 38 Ill.2d 83, 230 N.E.2d 161; *People v. Golson*, 32 Ill.2d 398, 207 N.E.2d 68." The testimony complained of here was not so prejudicial in nature as to require a reversal.

Finally defendant contends that under the facts in this case and the principles of indeterminancy in sentencing, the sentence given to appellant was excessive and should be reduced.

It is noted that defendant made a motion for probation, which motion was denied. The report of the probation officer made no recommendation for the reason that a motion for a new trial was pending. The probation officers' report and the record establishes that defendant had no prior arrest or convictions. He served nine years in the military service, during which period he was A.W.O.L. on two different occasions, once for seven days and once for 31 days. The punishment for the 31 day absence without leave was to extend his time in the service by one year, however, this was corrected when he re-enlisted. All of his discharges from the service were honorable. He was a high school graduate and had a good work record since graduation and was employed at the time of his arrest. He participated and lettered in sports while in high school and until his senior year his grades were quite good.

At the time sentence was imposed the minimum sentence for the crime was two years. It is noted that the legislature has since amended the statute increasing the minimum term to five years.

We are cognizant of the Supreme Court's admonition in *People v. Taylor*, 33 Ill.2d 417, 211 N.E.2d 673, that the power granted to reviewing courts to reduce sentences should be exercised with caution and circumspection. We are also aware of the constitutional provision that all penalties shall be proportionate to the nature of the offense, (Article I, Section 10, Illinois Constitution 1970) and what purposes are to be achieved for the imposition of punishment for a criminal offense. *People v. Brown*, 60 Ill.App.2d 447, 208 N.E.2d 629; *People v. Evrard*, 55 Ill.App.2d 270, 204 N.E.2d 777.

■■ During the hearing to consider defendant's motion for probation the trial judge noted that the defendant's record was "good if not exemplary." The trial court also noted in commenting on the probation officer's report that "it does show a good prior record on the part of the defendant in general with some minor exceptions." The court went on then further to state, "I note this is a crime of violence of the worst sort and while there are extenuating circumstances in the form of an apparently good previous life, I do not feel that it would be fulfilling my obligation to grant probation * * *." With this point of view we cannot disagree, however, when considering the sentence to be imposed

considerable weight must be given to the previous record of the defendant, tempered of course by the gravity of the offense committed.

The State cites numerous cases to fortify their argument that the sentence imposed was not excessive. An examination of each of the cases indicates that in some, defendant failed to sustain his burden of proof and for all intents and purposes waived his rights to have the court review the sentence imposed. The cases cited by the People involved crimes of violence, including rape and aggravated assault, prior record on the part of the defendant, and gross misconduct by the defendant while in custody during and after the trial. *People v. Nelson,* 41 Ill.2d 364, 243 N.E.2d 225; *People v. Barnes,* 118 Ill.App.2d 128, 255 N.E. 18; *People v. Pahl,* 124 Ill.App.2d 177, 260 N.E.2d 405; *People v. Hanserd,* 125 Ill.App.2d 465, 261 N.E.2d 317; *People v. Gold,* 38 Ill.2d 510, 232 N.E.2d 702.

██ After giving due consideration to the facts in this case it is the opinion of this court that the minimum sentence of four years was excessive. The nature of the crime moved the court to deny defendant probation and should not now mitigate against his chances of rehabilitation and early release from prison.

Accordingly the judgment and sentence of the circuit court of Kankakee County are modified to provide that the sentence imposed on defendant be confinement in the penitentiary for a term of not less than two years nor more than seven years and as so modified, the judgment is affirmed.

Judgment modified, and as modified, affirmed.

ALLOY, P. J., concurs.

Mr. JUSTICE DIXON, partially dissenting:

While agreeing that the conviction should be affirmed, I cannot agree that the sentence should be reduced.

The majority opinion seems to indicate that armed robbery is not a serious offense unless someone is shot. The present 5 year minimum (with no eligibility for probation) should indicate otherwise. The future Code of Corrections should also indicate otherwise.

Armed robbery with the most vicious short range weapon on earth has never been the type of crime which calls for a "powder puff" approach. *People v. Brown,* 107 Ill.App.2d 406.

The possession and use of certain weapons inherently dangerous to human life constitute a sufficient hazard to society to alone justify more than a minimum sentence. The trial judge stated, "this defendant with a

sawed-off shotgun * * * which in itself is a crime, although he was never charged with that particular crime * * * went into a store and severely, seriously threatened the life of one person at least by confronting him immediately with this shotgun and terrorizing others, * * *. I am, however, going to give a lesser sentence than ordinarily would for a crime of this viciousness, because and only because of defendant's previous record."

The sentence herein should not be further reduced from judicial clemency, 15 I.L.P. Criminal Law, Sec. 848.5, Note 68.20.

I would further note that in *People v. Leggett* (1971), 2 Ill.App.3d 962, 275 N.E.2d 651, Armed Robbery (same trial judge) this court refused to reduce 9 to 12 and 8 to 12 sentences of first offenders.