THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JEFFREY CARRUTHERS, a/k/a JEFFREY CORETHERS, *et al.,* Defendants-Appellants.

(No. 57507; 

First District (3rd Division)—March 7, 1974.

James J. Doherty, Public Defender, of Chicago (Michael Weininger, Assistant Public Defender, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Robert Cohen, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Defendants, Jeffrey Carruthers (also known as Jeffrey Corethers) and Johnny Brown, were both found guilty by a jury of the offenses of murder and rape. Each defendant was sentenced to the penitentiary to serve

20 to 50 years for murder and 10 to 20 years for rape, to run consecutively. Both defendants appeal. On review, they contend that:

(1) the trial court denied a fair and impartial jury by prohibiting direct personal questioning of prospective jurors by their attorneys on voir dire examination;

(2) participation in the offense was not proved beyond a reasonable doubt;

(3) improper closing arguments of prosecution destroyed the presumption of innocence and shifted the burden to defendants; and

(4) the court erred in ordering consecutive sentences.

Defendant Carruthers further contends that

(5) the trial court erred in refusing to strike incompetent rebuttal testimony as to defendant's reputation.

The pertinent facts are hereinafter set forth.

On April 26, 1970, a group of between 5 and 15 Negro youths accosted Salvador Cabera and his girl friend Juanita Gonzalez, as they walked through Douglas Park in the city of Chicago. Cabrera died later that day of severe head injuries he sustained after being struck repeatedly with a baseball bat wielded by two of the youths. Miss Gonzalez was raped by four of the youths. The attacks occurred at 9 P.M. in a city park which is not well lighted at night. The two defendants were arrested the following day and charged with murder and rape.

At trial Regina Bradford testified that she and two friends were in the park and observed the attacks on Cabrera and Miss Gonzalez. She testified that Carruthers took a bat from defendant Brown's hand and struck Cabrera with it; that defendant Brown then took the bat from Carruthers and hit Cabrera with it again; and that the two defendants, along with two other youths, then carried Miss Gonzalez off in the direction of a bridge in the park. She further testified that at the time of the attacks she noticed white lines running across the top of defendant Carruthers' head. On cross-examination the witness admitted that she had known the defendants for some time and had never been on good terms with either of them, and that she had once tried to stab defendant Brown. She further admitted that she had been in the park prior to the attacks with one of the youths involved in the incident, and that she had told the police she did not see defendant Brown hit Cabrera. She testified that she did not remember telling the grand jury that she did not see defendant Brown hit Cabrera.

Eddie Morgan testified that he had been playing ball in the park and had observed the attack upon Cabrera. He stated that defendant Carruthers repeatedly hit Cabrera with a bat; that he could not identify

defendant Brown as being in the attacking group; and that he left the park immediately after the attack upon Cabrera was begun by defendant Carruthers. The witness further stated that he did not see anyone raped. On cross-examination he admitted that he had told the police defendant Carruthers had taken the bat from the hand of a "Ronnie C" and hit Cabrera with it.

Juanita Gonzalez testified that each of the defendants had hit Cabrera with a bat and then, together with two other boys, raped her. On cross-examination she stated that all of the boys looked alike; that she was tripped and raped immediately adjacent to where the attack upon Cabrera had occurred; and that she could not recall how long the attack and rape had taken.

Grace Carruthers testified on behalf of her grandson, defendant Carruthers, that April 26, 1970, between 6 P.M. and 9:45 P.M., the defendant was with her in their home at 1328 South Claremont in Chicago. Earline Hudson testified on behalf of defendant Carruthers that she is a resident of the apartment building at 1328 South Claremont, and that on April 26, 1970, she saw defendant Carruthers leave the building between 9:30 and 9:45 P.M.

The jury returned verdicts of guilty against each defendant on the murder and rape charges. After a hearing in aggravation and mitigation, in which it was determined that the defendants had no previous criminal convictions, the trial court sentenced each defendant and ordered that the individual sentences were to run consecutively. We proceed to a consideration of defendants' contentions upon appeal.

We consider initially defendants' contention that they were denied their right to a fair and impartial jury by the trial court's refusal to allow their attorneys to ask questions directly of the prospective jurors during the voir dire examination. Prior to commencing voir dire examination and over objection, the trial court ruled that pursuant to Supreme Court Rule 234, neither defense counsel nor the prosecution could personally direct questions to the prospective jurors. The attorneys were allowed to submit questions in writing which the trial court would ask of the prospective jurors and also to submit supplemental questions for the judge to ask whenever the attorneys deemed it necessary. The attorneys for both defendants and for the State submitted proposed questions. The trial court resolved all objections relative to the proposed questions and conducted the entire voir dire examination. At a point during the examination, when defendants had only one peremptory challenge remaining, defendants' counsel requested and were denied permission to personally question a prospective juror who was a former police officer and an acquaintance of an F.B.I. agent. After a denial of defendants' mo-

tion to excuse for cause, the prospective juror was excused by defendants with the remaining peremptory challenge. After having exhausted the peremptory challenges the court again refused a defense request to directly question a prospective juror—a woman—who upon questioning by the court revealed that she vaguely remembered reading something about the case but assured the court she would not be prejudiced by what she read. The court denied the motion of the defense attorneys to excuse the juror for cause. No additional questions were submitted to the trial court to be asked of either of those two prospective jurors. Defendants do not argue that the court erred in not excusing either of the prospective jurors for cause, nor that the jury finally selected was not fair and impartial, nor specify any other prejudicial error in the jury selection. Instead, the events relating to the examination of those two prospective jurors are urged as illustrative of how the defendants were denied the right to a fair and impartial jury by not permitting direct questions by their attorneys.

■ ■ In Illinois, applicable to both civil and criminal proceedings is Supreme Court Rule 234 (Ill. Rev. Stat. 1969, ch. 110A, par. 234) which provides as follows:

"Rule 234. Voir Dire Examination of Jurors.

The judge shall initiate the *voir dire* examination of jurors by identifying the parties and their respective counsel and briefly outlining the nature of the case. The judge shall then put to the jurors any questions which he thinks necessary, touching their qualifications to serve as jurors in the cause on trial. The parties or their attorneys shall be allowed a reasonable opportunity to supplement such examination, but shall not directly or indirectly examine jurors concerning matters of law or instructions."

The effect of the foregoing provisions is to place the primary duty of conducting voir dire examination upon the trial court, subject to a reasonable opportunity to supplement such examination by the parties or their attorneys. In *People v. Lobb* (1959), 17 Ill.2d 287, the Illinois Supreme Court stated that although the selection of an impartial jury does not require that the parties themselves be permitted to examine on voir dire, the court, in formulating Rule 24—1 (the present Rule 234) recognized and preserved that privilege by providing that the parties or their attorneys be allowed a reasonable opportunity to supplement the examination conducted by the court. While the trial court is vested with considerable discretion as to the extent to which supplementary questioning by the parties or their attorneys will be allowed (*People v. Lexow* (1962), 23 Ill.2d 541), it appears, under the authority of *Lobb*, that direct ques-

tioning of prospective jurors by the parties or their attorneys during voir dire examination is not to be totally prohibited. (See *Street v. Finney* (1973), 9 Ill.App.3d 638.) The Illinois rule differs from the federal rule where counsel *may* be required to ask questions through the court. (Fed. R. Civ. P. 47(A); and Fed. R. Crim. P. 24(A).) Our ruling is consistent with the provisions set forth in section 115—4(f) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1971, ch. 38, par. 115—4(f)), which provides:

> "(f) After examination by the court the jurors shall be examined, passed upon, accepted and tendered as a panel of 4 commencing with the State."

■■ We do not conclude, however, that the procedure employed by the trial court in the instant case, if error, was so prejudicial to the defendants as to require a new trial. In *Lobb* the court stated that a failure to permit pertinent inquiries to enable a party to ascertain whether the minds of the jurors are free from bias or prejudice which would constitute a basis for challenge for cause, or which would enable him to intelligently exercise his right of peremptory challenge, may constitute reversible error. The questions and answers in the examination of the jurors by the trial court in the instant case have been reviewed and the possible effect of the limitations imposed by the court have been considered. It is noted that no additional questions were submitted to the trial court by counsel to be propounded to either of the two prospective jurors hereinbefore discussed.

From our examination there is nothing to show that the defendants' attorneys were prevented from discovering any fact or reason why a prospective juror might be biased or lack the essential qualifications for service as a juror in the case. Moreover, there is nothing to indicate that the defendants' attorneys were precluded from an intelligent exercise of the right of peremptory challenge by the prohibition imposed by the court against direct questioning. Counsel were directed to submit any supplemental questions deemed necessary to be asked of the jurors by the court, but their failure to avail themselves of the privilege serves only to emphasize the fact that the examination of the court was sufficiently thorough to reveal any facts necessary to show grounds of challenge for cause or for an intelligent exercise of the right to challenge peremptorily. (See *People v. Lobb*, 17 Ill.2d 287, at 302.) Where a voir dire examination—whether conducted by the court or by counsel—results in a qualified and impartial jury, no prejudicial error occurs in its selection. *Justice v. Justice* (1969), 114 Ill.App.2d 254.

■■ In light of the foregoing we therefore conclude that the limitations

imposed upon voir dire examination, although not literally authorized by Supreme Court Rule 234, were not of such nature as to constitute reversible error.

The defendants' second contention is that their identification as participants in the offenses was not proved beyond a reasonable doubt. Four arguments are presented by defendants in support of this contention: the setting of the offense was not conducive to a trustworthy identification; the identification testimony of Regina Bradford, Eddie Morgan and Juanita Gonzalez was weak, contradictory and inconsistent with prior statements; the in-court identifications by Regina Bradford and Juanita Gonzalez were the result of pretrial suggestion by the police; and the failure of the State to call the two occurrence witnesses who were with Regina Bradford at the time of the offenses, or to explain their absence, raises a strong inference that their testimony would be damaging to the State's case.

■■ The first two arguments as to the setting of the offenses and the character of the identification testimony presented at trial are challenges to the sufficiency and credibility of the testimony therein. Questions of identification are for the determination of the jury whose decision should not be upset unless the evidence is so unsatisfactory and implausible as to create a reasonable doubt of a defendant's guilt. (*People v. Tucker* (1969), 118 Ill.App.2d 136.) In the instant case Carruthers was identified by the victim of the rape and additionally by two eyewitnesses, both of whom testified that this defendant was previously known to each of them. Defendant Brown was also identified by the rape victim and by one of the eyewitnesses who testified that she had also previously known this defendant. The other eyewitness testified that he left the park immediately after defendant Carruthers began the attack on · Cabrera and he was therefore not in a position to observe the subsequent actions of defendant Brown or the attack on Miss Gonzalez. The adequacy of the lighting at the scene of the offenses, a detail in the appearance of one of the defendants which only one of the witnesses could recall observing, and the inconsistencies of the eyewitnesses' testimony to their prior statements were all brought to the attention of the jury for their use in deliberating the sufficiency and credibility of the identification testimony. This testimony, if believed, was not so unsatisfactory or implausible as to require that the jury's determination be upset.

The defendants further maintain that the in-court identifications by Regina Bradford and Juanita Gonzalez were the result of pretrial police suggestion and therefore should have been suppressed by the trial court. Both of the defendants were arrested the day after the attacks upon Cabrera and Miss Gonzalez. On the day of his arrest, defendant Brown,

while handcuffed to a window screen and alone in an interrogation room at the local station house, was viewed by Regina Bradford and identified by her as one of the youths who had struck Cabrera and raped Miss Gonzalez. Regina Bradford testified at trial that she had known each of the defendants for 5 years and had attended school with them. Two days after the attacks, Juanita Gonzalez identified the 2 defendants from a book of 200 police mug shots but indicated to the police that she wished to see a full photograph of defendant Carruthers. Later that day at the office of the State's Attorney she again identified defendant Brown and defendant Carruthers from a group photograph of six Negro youths. Neither defendant was ever placed in a lineup for purposes of identification.

Prior to trial, each defendant moved the court to suppress all testimony concerning pretrial identifications and to suppress all in-court identifications. The trial court suppressed all testimony concerning pretrial identifications based on photographs because no attorney had been provided for the defendants at the time of their arrest. However, the court denied defendants' motion to suppress all in-court identifications and found specifically as to Juanita Gonzalez that any in-court identification by her would have an origin independent of the photographs she had been shown by the police.

■■ In support of his assertion that the trial court erred in not suppressing the in-court identification by Regina Bradford, defendant Brown cites *Stovall v. Denno* (1967), 388 U.S. 293; *People v. Blumenshine* (1969), 42 Ill.2d 508; and *People v. Laurenson* (1971), 131 Ill.App.2d 2, 268 N.E.2d 183. These cases hold that identification procedures in which an accused is exhibited to witnesses alone, in the absence of any justifying or saving circumstances, are so improperly suggestive as to amount to a denial of due process. One saving circumstance which will prevent a denial of due process in such cases was established in *People v. Robinson* (1969), 42 Ill.2d 371. There the court held that when an accused is known to the identifying witness prior to the commission of the crime, no question relating to the propriety of the identification procedures can arise since the identification in such a case would be independent and not influenced by any pretrial confrontation. In the instant case, Regina Bradford testified that she had known the defendants for 5 years and had attended school with each of them. She further testified that she had never got along very well with either of the defendants, and on one occasion had even attacked defendant Brown with a knife. In light of this testimony, it is obvious that defendant Brown was well known to the witness at the time of her identification of him in the interrogation room and for a period of time prior to the commission of the offenses

herein. Under these circumstances the trial court was correct in refusing to suppress Regina Bradford's in-court identification of defendant Brown.

In support of their assertion that the trial court erred in not suppressing the in-court identifications by Juanita Gonzalez, the defendants cite *People v. Holiday* (1970), 47 Ill.2d 300. In that case the court held that under *Simmons v. United States* (1968), 390 U.S. 377, a conviction based on in-court eyewitness identification following a pretrial photographic identification will be set aside on that ground only if the pretrial photographic procedures are so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. A defendant who moves to suppress identification on the ground of suggestive pretrial procedures has the burden of showing that the procedures employed were so impermissibly suggestive and conducive to misidentification that he was denied due process of law. *People v. Nelson* (1968), 40 Ill.2d 146.

■■ At the hearing on defendants' motion to suppress, Miss Gonzalez testified that she was standing with Cabrera when the two defendants and the other boys approached them; that she was at Cabrera's side when he was questioned briefly by defendant Carruthers; and that she observed each of the defendants strike Cabrera prior to their attack upon her. She further testified that 2 days later she identified each of the defendants from a book of 200 police mug shots; that the police officers present in no way directed her attention to the defendants' photographs; and that after she expressed a desire to see a full body photograph of defendant Carruthers she again identified each defendant from a group photograph of 6 Negro youths. As stated by the trial court in denying defendants' motion to suppress this witness' testimony, there is nothing in the record to indicate that the police suggested to Miss Gonzalez the defendants' participation in the crimes or that their photographs were drawn to her attention prior to her independent examination of them. The defendants clearly failed to meet their burden of showing that any in-court identification by Miss Gonzalez ran the substantial likelihood of being the result of pretrial police suggestion rather than a recollection of independent origin on her part.

■■ The final argument presented by the defendants in their contention that their participation in the offenses was not proved beyond a reasonable doubt pertains to the failure of the State to call the two occurrence witnesses who were with Regina Bradford at the time of the commission of the offenses. The defendants cite *People v. Smith* (1971), 3 Ill.App.3d 64, and *People v. DiVito* (1966), 66 Ill.App.2d 282, for the proposition that the failure to call these two witnesses or explain their absence gives rise to a strong inference that their testimony would be damaging to the State's case. While circumstances can exist, as in *Smith* and *DiVito*, where

the failure by the State to call known and available witnesses will lead to a negative inference, the general rule is that the State is not obligated to call all witnesses to a crime, and no inference will arise from the failure to do so. (*People v. Jones* (1964), 30 Ill.2d 186.) In the instant case, the State produced two eyewitnesses and one victim of the offenses. All three witnesses corroborated each other as to the attack on Cabrera by defendant Carruthers. Miss Gonzalez and Regina Bradford corroborated each other as to the attack on Cabrera by defendant Brown and Miss Gonzalez' subsequent rape by the two defendants. On the basis of such testimony, no negative inferences can arise from the failure of the State to call the two occurrence witnesses who were with Regina Bradford at the time of the commission of the offenses.

After consideration of all of the above arguments we feel that the identifications of the defendants as participants in the two offenses involved herein were proved beyond a reasonable doubt.

Defendant Carruthers makes the further contention that the trial court erred in refusing to strike incompetent rebuttal testimony as to his reputation. In rebuttal to a reputation witness who had testified for defendant Carruthers, the State called one Montague Martin who testified on direct examination that Carruthers' reputation in the community as a law-abiding citizen was bad. On cross-examination, Martin stated that his testimony was based in part upon conversations he had with people in the community after the commission of the offenses in question. The trial court denied Carruthers' motion to strike all of Martin's testimony.

■■ It is well settled that the character of an accused is provable only by evidence of general reputation, and that the personal opinion of a witness is not competent evidence to prove general reputation. (*People v. Lyons* (1954), 4 Ill.2d 396.) Moreover, evidence of character must be confined to proof of general reputation at or before the commission of the offense, and it is improper to admit evidence which covers an accused's reputation after the commission of the offense or what was said after the commission of the offense with reference to the accused's character either before or after the offense. (*Pople v. Willy* (1921), 301 Ill. 307.) Here, it was clearly established on cross-examination that Martin's testimony as to the general reputation of defendant Carruthers was based upon an incompetent foundation. The trial court erred in denying the defendant's motion to strike this testimony. However, in light of the strong testimony presented that defendant Carruthers instigated the attack upon Cabrera and the testimony presented as to his participation in the subsequent rape of Miss Gonzalez, we do not conclude that this defendant was so prejudiced by the admission of this testimony that a new trial is required.

Defendants next contend that the closing argument of the assistant State's Attorney destroyed the presumption of innocence and shifted the burden of proof to the defendants. Although the prosecutor's remarks were directed solely to defendant Brown, defendant Carruthers urges that he was also inherently prejudiced by the same remarks. During his opening statement, defendant Brown's attorney stated to the jury that Brown might offer an alibi defense but that he could not tell the jury what that defense might be because the prosecution would then learn of it. No alibi defense was made by defendant Brown during the course of the trial. In his closing argument to the jury, the same defense attorney stated that the reason Brown had not testified in his own behalf was that the State had failed to prove him guilty beyond a reasonable doubt and hence, such testimony was not needed. Subsequently, the assistant State's Attorney stated in his closing argument that the reason Brown had not testified was because he was afraid to do so in view of the fact that he could find no one who would testify for him in alibi. This response by the assistant State's Attorney made no reference to the alibi defense which defendant Carruthers had presented. Defendant Brown's attorney objected to the prosecutor's remark, but the objection was overruled by the trial court on the basis that it came as a proper reply to a defense argument in an area which had been opened up in the defense attorney's closing argument. No objection to the prosecutor's remark was made by defendant Carruthers.

It is conceded by the defendants that while a prosecutor normally may not comment on an accused's failure to testify, such comment may be proper when that area has been opened to fair comment by the accused's first directing the jury's attention to it himself. (*People v. Finney* (1967), 88 Ill.App.2d 204.) Instead, the defendants, citing *People v. Weinstein* (1966), 35 Ill.2d 467, and *People v. Smith* (1969), 105 Ill.App.2d 8, respectively, argue that in the present case the prosecutor's remarks transcended the bounds of fair comment in that they shifted the burden of proof to defendant Brown to prove his innocence and implied that defendant Brown was guilty because he had no alibi witnesses to testify on his own behalf. We disagree.

A situation analagous to the one before us arose in *People v. Weisberg* (1947), 396 Ill. 412. There, the defendant appealed from a murder conviction in part upon the closing argument of the prosecutor which made mention of a currently notorious crime and maintained that when the perpetrator was found and tried, his attorney would attempt to place the prosecutor on trial and "fog up" the issues just as was being attempted in the case before them. The court held that an attorney for a defendant cannot provoke a reply to his own improper argument and

then claim error, and that the closing remarks of the prosecutor in that case were in proper response to the opening arguments of the defense attorney in which the motives of the prosecutor were impugned and wherein the first mention was made of the current notorious crime.

In the instant case defendant Brown's attorney informed the jury during opening argument that Brown might offer an alibi defense, but that he could not state what that defense was. When the reason why defendant Brown did not testify in his own behalf was opened to fair comment by the closing argument of his attorney, the prosecutor expressed the challenged comment in the form of a response to the closing argument and a refutation of the opening statement of defendant's attorney concerning Brown's potential alibi defense. Under such circumstances, the defendant may not predicate error on a response by the prosecutor which he himself provoked.

■■ Defendant Carruthers' assertion that he was prejudiced by these remarks of the prosecutor which were directed solely at his codefendant is without merit. The remarks were not intended nor calculated to draw the jury's attention to the fact that defendant Carruthers had not testified, and in the absence of such were not prejudicial as to him. *People v. Mentola* (1971), 47 Ill.2d 579.

■■ The defendants contend finally that the trial court abused its discretion in ordering consecutive sentences imposed upon two defendants who were 15 and 17 years of age and who had no prior criminal convictions. Ill. Rev. Stat. 1969, ch. 38, par. 1—7 provides that it is within the discretion of the trial court to order consecutive sentences where a defendant is convicted of two or more offenses which do not result from the same criminal conduct. The defendants concede the applicability of this statute to the two offenses for which they were found guilty and that the individual sentences imposed for each of these offenses are within the proscribed statutory limits. The record reflects that during the hearing in aggravation and mitigation the trial court, in deliberating the length and form of the sentences to be imposed, carefully considered the defendants' ages and lack of criminal record, as well as the serious nature of the offenses involved. We find no abuse of discretion on the part of the trial court in ordering consecutive sentences for the defendants in the instant case. *People v. Armstrong* (1970), 127 Ill.App.2d 457.

For the reasons stated herein the judgments and sentences of the Circuit Court of Cook County are affirmed.

Affirmed.

McNAMARA, P. J., and DEMPSEY, J., concur.