THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ARTHUR ETTEN, Defendant-Appellant.

(No. 59124;

First District (5th Division)—June 13, 1975.

James J. Doherty, Public Defender, of Chicago (David W. Hirschboeck and Ronald P. Alwin, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Thomas D. Rafter, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial, defendant was convicted of the murder of his ex-wife in violation of section 9—1 of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 9—1) and was sentenced to a term of 25 to 75 years. On appeal, he contends that: (1) his right to examine prospective jurors was improperly restricted; (2) the State improperly relied upon testimony regarding his failure to make a statement; and (3) the State's arguments to the jury violated his rights.

Following the denial of various defense motions including motions to suppress evidence and identification, the matter proceeded to trial. The pertinent facts are not in dispute.

In the early morning hours of December 10, 1971, defendant broke into the home of Mr. and Mrs. Raymond Quitter and at gunpoint forced them to drive him to the home of his ex-wife, Kathleen Etten, who resided at 5830 S. Whipple in Chicago with their 12-year-old son Brian and her mother, Mary Nolan. When they reached that address, defendant ordered Quitter to knock on the door. Mrs. Nolan answered the door and when defendant identified himself, she told him to leave. When defendant's wife awoke and was informed who was there, she said: "Oh my God, don't let him in, call the police." Defendant then shot open the door with his rifle and went upstairs. His ex-wife pleaded with him not to shoot her, but he shot her six times, killing her. Defendant then fled. He was apprehended at 13160 Greenwood in Blue Island after tear gas was fired into that residence.

Although not one of the numerous prosecution witnesses thought defendant was mentally ill, defendant based his defense on grounds of insanity. He relied primarily upon the testimony of his mother, Katherine Etten, with whom he resided. In her opinion, defendant was mentally ill. She testified he had a difficult childhood and when his ex-wife would not permit him to visit his son, he began acting strangely and drinking heavily. On the evening of December 9, 1971, the same night defendant killed his ex-wife, she and her son were watching television. Suddenly, defendant, who was acting like a "zombie," stood up and said: "I feel like shooting somebody." She told him if he wanted to shoot somebody, he should shoot her. He then shot her in the left shoulder. She admitted telling the police she had shot herself accidentally, but said she did so to protect her son. No psychiatrist testified for defendant. However, on rebuttal, the State called Dr. Thomas Benton, a psychiatrist who had examined defendant. In Benton's opinion, defendant had the capacity to understand the criminality of his acts and to conform his conduct to the requirements of law. The jury found defendant guilty.

OPINION

■■ Defendant contends that his right to examine prospective jurors was improperly restricted. Supreme Court Rule 234 (Ill. Rev. Stat. 1969, ch. 110A, par. 234) provides:

> "The judge shall initiate the *voir dire* examination of jurors by identifying the parties and their respective counsel and briefly outlining the nature of the case. The judge shall then put to the jurors any questions which he thinks necessary, touching their

qualifications to serve as jurors in the cause on trial. *The parties or their attorneys shall be allowed a reasonable opportunity to supplement such examination,* but shall not directly or indirectly examine jurors concerning matters of law or instructions." (Emphasis added.)

This rule places primary responsibility for *voir dire* upon the trial judge. However, since the case of *Donovan v. People,* 139 Ill. 412, 414, 28 N.E. 964, 965, a defendant in Illinois has had the right to examine prospective jurors directly. Although the foundations of the *Donovan* case have been questioned (*People v. Lobb,* 17 Ill.2d 287, 301, 161 N.E.2d 325, 333), it appears that direct questioning of prospective jurors is not to be prohibited entirely. (*People v. Carruthers,* 18 Ill.App.3d 255, 261-262, 309 N.E.2d 659, 664-665.) Illinois has not yet adopted the Federal rule regarding *voir dire.* We do note, however, that under the Supreme Court Rule the defendant is entitled only to a "reasonable opportunity" to supplement the trial court's examination.

In the instant case, the trial court did not permit defendant to examine prospective jurors directly. The court required counsel to submit written questions which would be incorporated in the court's examination of the jurors. This procedure, although applied in the Federal courts, was technically improper under prevailing Illinois law. However, such an error does not necessarily require reversal of a conviction, particularly where no prejudice is shown. (*People v. Carruthers,* 18 Ill.App.3d 255, 309 N.E.2d 659.) Here, defense counsel did submit some questions to the court; but whether through misunderstanding or inadvertence, he did not submit other questions in accordance with the court's procedure. However, the record does not reflect what other questions defendant may have asked. Furthermore, we note that during *voir dire,* the court did modify its examination in response to defense comments and did grant defendant additional peremptory challenges when he so requested. Taking the *voir dire* examination in this case as a whole, we cannot say that defendant was in any way deprived of an impartial jury by the court's technically erroneous application of the Federal rule regarding *voir dire.*

■■ Defendant next contends that the State improperly relied upon testimony regarding his failure to make a statement. Defendant argues that the reference, by the police officers at trial, to his refusal to make further statements after being arrested and advised of his rights was reversible error pursuant to *Miranda v. Arizona,* 384 U.S. 436. While reference should not be made to a defendant's exercise of his right to remain silent, such an error may be waived by defendant's failure to object (*People v. Flowers,* 7 Ill.App.3d 582, 587, 287 N.E.2d 752, 756) or may not justify reversal if it is harmless beyond a reasonable doubt.

*People v. Brady*, 14 Ill.App.3d 830, 303 N.E.2d 528; *People v. Garnes*, 12 Ill.App.3d 210, 298 N.E.2d 399.

■■ In the instant case, two police officers testified that after defendant was arrested and advised of his rights, defendant asked about his mother's condition. After being told that she was all right, defendant stated: "I know my wife is dead." When one of the officers asked how he knew that, defendant responded: "I don't have to tell you. You have informed me of my rights." However, defendant did not object to this testimony at trial and therefore has waived the error. Moreover, even if he had objected, the evidence against him was so overwhelming that the officers' references, when taken in context, cannot possibly be viewed as prejudicial.

■■ Defendant lastly contends that the State's arguments to the jury violated his rights. Defendant first argues that the State committed reversible error by commenting on his possible defenses. He suggests that such comments deprived him of a fair trial and improperly shifted the burden of proof to him. A prosecutor may not comment on defendant's failure to testify (*Griffin v. California*, 380 U.S. 609) or argue that the burden is on defendant to prove himself innocent. (*People v. Weinstein*, 35 Ill.2d 467, 220 N.E.2d 432.) However, a prosecutor is permitted to comment on evidence adduced at trial and may draw reasonable inferences from such evidence, even if those inferences are unfavorable to the defendant. See *People v. Kostos*, 21 Ill.2d 496, 498-499, 173 N.E.2d 466, 468.

In the instant case, the assistant State's Attorney discussed defenses defendant could have raised and pointed out that on the evidence in the case the only defense defendant had available was the defense of insanity. While defendant asserts that the State's argument had the effect of commenting on his failure to testify and of shifting the burden to him, we cannot agree. It was based upon the evidence presented and was not calculated to direct the jury's attention to defendant's failure to testify. This argument falls within the realm of fair comment.

■■ Defendant next argues that the State committed reversible error during final arguments by accusing counsel of manufacturing an insanity defense. While the prosecutor is not permitted to appeal to the prejudices of the jury or to accuse defense counsel of seeking to free his client by trickery (*People v. Freedman*, 4 Ill.2d 414, 123 N.E.2d 317), he may comment on and draw inferences from the evidence.

Here, the assistant State's Attorney, over defense objection, asked the jury to follow the law saying that if they did they would final defendant's insanity defense a "sham" which was "conjured up for sympathy" and to give him a "compromise" and asked them not to compromise. Although

defendant asserts that these comments improperly aroused the prejudices of the jury and in no way aided the jury in weighing the evidence, the prosecutor's argument here was not an extended attack on either defendant or his counsel and was intended to discourage the jury from basing their judgment on sympathy rather than on the law. We find nothing improper about the State's argument in this regard.

Defendant next argues that the State should not have commented that defendant could be released from a mental institution within a short time. While discussing the testimony of defendant's mother, the prosecutor commented that her testimony may have been motivated by her belief that her son could be released from a mental institution in a short time. We note that defendant's mother had admitted not telling the police the truth in an effort to protect her son. Nonetheless, defense counsel objected to this argument and initiated a colloquy with the assistant State's Attorney regarding the amount of time defendant could spend in such an institution. As a result, the court admonished the jury not to consider such argument or the comments of counsel and admonished counsel on both sides. Both the prosecutor and defense counsel apologized for their conduct. In the midst of a hard-fought trial, statements are sometimes made which are better left unsaid; however, such statements do not necessarily require reversal of a conviction. In the instant case we do not believe defendant was prejudiced by the State's final argument.

■■ Defendant lastly argues that the prosecutor misrepresented the law of insanity during final argument by emphasizing that defendant knew what he was doing. Section 6—2(a) of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 6—2(a)) provides:

> "A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law."

While the assistant State's Attorney did argue that defendant knew what he was doing (which may be a factor to consider in determining whether defendant appreciated the criminality of his conduct), he also pointed out that the court would instruct the jury regarding the law and stated, in language substantially the same as the statute, what he thought the instruction would be. Furthermore, we note that the trial court did instruct the jury on the law of insanity and that defendant has not complained that the instruction which the jury was given on the insanity issue was erroneous. In these circumstances, the State's statements were not reversible error.

■■ Defendant also argues that the cumulative effect of the errors in the State's argument was prejudicial. Since we have already determined that none of the errors of which defendant complains require reversal, in order to examine the cumulative effect of these errors, we must look to the record as a whole. In doing so, we note that the evidence against defendant was overwhelming. Indeed, on the evidence in this case, no other result would have made sense. Defendant was not prejudiced by the State's arguments.

Therefore the judgment is affirmed.

Affirmed.

BARRETT, P. J., and SULLIVAN, J., concur.